**MESSNER REEVES LLP**
Renee Finch (Nevada Bar No. 13118)
8945 West Russell Road, Suite 300
Las Vegas, Nevada  89148
Telephone:  (702) 363-5100
Facsimile:  (702) 363-5101
Email:  rfinch@messner.com

**LASH & GOLDBERG LLP**
Justin C. Fineberg (*pro hac pending*)
Nicholas A. Ortiz (*pro hac pending*)
Jonathan E. Siegelaub (*pro hac pending*)
Benjamin R. Shiekman (*pro hac pending*)
100 S.E. 2nd Street, Suite 1200
Miami, Florida 33131
Telephone:  (305) 347-4040
Facsimile:  (305) 347-4050
Email:  jfineberg@lashgoldberg.com
Email:  nortiz@lashgoldberg.com
Email:  jsiegelaub@lashgoldberg.com
Email:  bshiekman@lashgoldberg.com

*Attorneys for Plaintiff Fremont Emergency Services (Scherr), Ltd.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FREMONT EMERGENCY SERVICES (SCHERR), LTD.;<br><br>Plaintiff,<br><br>vs.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY and UNITED HEALTHCARE SERVICES, INC.,<br><br>Defendants. | Case No.<br><br>*Complaint* |

## INTRODUCTION

### THE AMERICAN HEALTHCARE SYSTEM AND FEDERAL LAW

This is a case about whether insurers can arbitrarily withhold and reduce payment for care provided to the sickest patients in hospital emergency departments.  Specifically in this case,

an infant with a traumatic brain injury and a child with a ruptured appendix received life-saving care from a Fremont Emergency Services (Scherr), Ltd. ("Fremont") emergency clinician, yet United Healthcare paid them nothing.  United Healthcare, the largest health insurance company in America which can afford to pay its CEO $142 million in 2021 alone, does exactly this thousands of times every day to emergency medicine physicians under the pretext of a prepayment review policy.  Today, under this sham review policy, United withholds payment on over 60% of Fremont's claims for reimbursement for the highest acuity patients which it treats.  However, the overall acuity of Fremont's emergency claims is lower than national averages and is otherwise consistent with other emergency clinicians in Nevada. To believe United, Nevadans who visit emergency departments staffed by Fremont experience high acuity emergencies at a rate *half* of the national average. That is clearly be absurd. To the contrary, United's policy is calculated to generate more profit: the less United pays to clinicians, the more it makes.  Fremont implores this Court to stop this nefarious practice, as it violates the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 *et seq.* ("ERISA"), and the No Surprises Act, 42 U.S.C. § 300gg-111(a)(1) ("NSA").

ERISA sets forth minimum standards for health plans like those administered by Defendants, including the requirement that Defendants pay timely and appropriate reimbursement for emergency medical treatment. These ERISA-based obligations were recently reinforced and amplified by the NSA, which prohibits Defendants from denying emergency department claims based on diagnosis codes and refusing to consider all available information before denying an emergency claim.  These laws protect emergency services providers like Fremont from having to overcome unreasonable hurdles to get paid.

Defendants' daily conduct violates ERISA and the NSA and causes grievous harm to Fremont, as set forth more fully below.  Defendants' methods, and the facts and circumstances here, reflect an industry-wide failing that will bring down the U.S. healthcare system and destroy our healthcare safety net if it continues.  In light of that dire situation and the long-term injustices United has committed, Fremont respectfully asks the Court to put a stop to Defendants' wrongdoing by requiring them to comply with the standards set by Congress to protect American workers, their families, and the healthcare providers who treat them.

## DEFENDANTS' SCHEME TO DRIVE RECORD PROFITS BY REFUSAL TO COMPLY WITH ERISA

Defendants UnitedHealthcare Insurance Company and United Healthcare Services, Inc. (together, "Defendants" or "United"), together with various affiliates, have engaged in decades-long, nationwide schemes that violate federal law and have unlawfully shifted billions of dollars of costs onto patients, hospitals, taxpayers, and front-line clinicians.  United persists in this conduct, despite civil penalties, settlements, and punitive damages awards that total some half billion dollars.

Recent sanctions include a $60 million punitive damages award made by a Nevada jury, which unanimously found, by clear and convincing evidence, that Defendants and their affiliates underpaid thousands of claims for emergency treatment provided by Fremont to United's insureds – and were "guilty of oppression, fraud, or malice" in so doing. Notwithstanding this and other sanctions, United's misconduct remains undeterred.

As it now appears that no amount of monetary sanctions will put a stop to United's unlawful activity, Fremont now brings this ERISA action – seeking no monetary damages, but asking the Court to enjoin United from applying a corrosive, unlawful policy that has caused,

3

and is causing, hundreds of millions of dollars in harm to United's own members, to Fremont and other healthcare providers, and to the U.S. healthcare system as a whole.

## PARTIES

1.      Plaintiff Fremont is a Nevada professional corporation whose medical professionals staff emergency departments throughout Nevada.  These clinicians are on the front lines of responding to and resolving life- and health-threatening medical emergencies in Nevada. For the calendar year 2021, Fremont treated roughly 12,500 patients per month in the Clark County emergency departments in which they practice.

2.      Defendant UnitedHealthcare Insurance Company is a Connecticut corporation with its principal place of business in Connecticut.  UnitedHealthcare Insurance Company is responsible for paying for the emergency medical services provided by Fremont to one or more of the Patients.

3.      Defendant United Healthcare Services, Inc., which does business as UnitedHealthcare or "UHC" and through UnitedHealthcare Insurance Company, is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota.  United Healthcare Services, Inc. is responsible for paying for the emergency medical services provided by Fremont to one or more of the Patients.

## JURISDICTION AND VENUE

4.      This action is brought pursuant to 29 U.S.C. § 1132(a)(3) to enjoin an act or practice by United that violates ERISA and the terms of the relevant health plans. The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

5.      Venue lies in the District of Nevada pursuant to 29 U.S.C. § 1132(e)(2) because (1) the ERISA-governed health plans at issue in this action were issued to individuals who reside in this District and were administered in part in this District, (2) the obligations owed by United under the relevant ERISA-governed plans were to take place in this District, and (3) United may be found in this District as it is authorized to serve as a third-party administrator of the relevant health plans in the State of Nevada.

## FACTS

6.      United is the largest health insurer in the United States, administering care for 26.6 million people across all 50 states, D.C., and U.S. territories.[1]

7.      As of 2021, United was the fifth-largest company *of any type* in the United States.

8.      In 2021, United achieved *$17.3 billion in profits* – more than *double* that of the next-most-profitable health insurer.

9.      United generates these enormous profits through corrupt and unethical schemes that deny fair and timely reimbursement to the clinicians who render medical services to patients covered by insurance issued or administered by United (United's "Members").

10.      These schemes are widely recognized across the U.S. medical community as unlawful and potentially devastating, and they have been condemned by the American Medical Association ("AMA") and its specialty societies.[2]

---

[1] UnitedHealth Group, Inc. Form 10-K, FY ended Dec. 31, 2021 at 4, (https://www.unitedhealthgroup.com/content/dam/UHG/PDF/investors/2021/UNH-Q4-2021-Form-10-K).

[2] Letter from AMA Specialty Societies to Brian Thompson, CEO or UnitedHealthcare, dated June 16, 2021 (copy true and correct copy attached as Exhibit 1 and incorporated as though fully set forth herein.)

11.     United's profits do not translate into reduced premiums or other benefits for the Members.  Rather, its record profits benefit its executives and shareholders.

12.     Since 2010, the stock of United's parent, UnitedHealth Group Inc., has increased by approximately 1,000%.

13.     United's recently departed CEO, David Wichmann, received more than *$142 million* as compensation in his final year as CEO.[3]

14.     United's decision to prioritize executive compensation and record profits over providing fair reimbursement to front line clinicians exemplifies United's corporate culture of greed.

15.     United's unlawful and unethical schemes have repeatedly been uncovered by government investigators and private actors, who have tried repeatedly to bring United to justice and force changes to its nefarious conduct.

16.     In 2009, for example, the New York Attorney General uncovered United's scheme operated through its Ingenix subsidiary, stating it was a "fraudulent" and "conflict-ridden" system through which United had underpaid healthcare providers for years.

17.     United paid $400 million to settle the New York Attorney General's investigation of Ingenix and a related class action.

18.     In May 2015, United settled for $11.5 million a lawsuit brought by four physician organizations alleging United was using an automated algorithm to adjudicate claims improperly.[4]

---

[3] Patrick Kennedy, *Former UnitedHealth CEO Made $142.2M Last* Year, (May 10, 2022),                https://www.startribune.com/former-unitedhealth-ceo-made-142-2m-last-year/600171979/?refresh=true

[4] C. Solnick, *United Reaches $11.5 Million Settlement*, Long Island Bus. News (May 6, 2015), *available at* https://libn.com/2015/05/06/unitedhealthcare-reaches-11-5m-settlement.

19. In October 2019, a study published in *Science* found that a widely-used algorithm developed by a United subsidiary prioritized care for healthy white patients over sick African-American patients.[5]

20. The researchers found that the algorithm dramatically underestimated the health needs of the sickest African-American patients, amplifying long-standing racial disparities in medicine.[6]

21. The New York Department of Financial Services launched an investigation into the United algorithm.[7]

22. United has been the subject of investigations by the Department of Labor for implementing policies that violated applicable law.

23. For example, in 2021, the Department of Labor announced that United Healthcare Insurance Co. and United Behavioral Health would pay $13.6 million to affected health plan participants and beneficiaries; pay $2.1 million in penalties; and take other corrective action following investigations and litigation by the U.S. Department of Labor and the New York State Attorney General.[8]

---

[5] M. Evans, *New York Regulator Probes UnitedHealth Algorithm for Racial Bias*, Wall St. Journal (Oct. 26, 2019), *available at* https://www.wsj.com/articles/new-york-regulator-probes-unitedhealth-algorithm-for-racial-bias-11572087601; *see also* Z. Obermeyer, et al., *Dissecting racial bias in an algorithm used to manage the health of populations*, Science (Oct. 25, 2019) *available at* https://www.science.org/doi/full/10.1126/science.aax2342.

[6] C. Johnson, *Racial Bias in a Medical Algorithm Favors White Patients Over Sicker Black Patients*, Washington Post (Oct. 24, 2019), *available at* https://www.washingtonpost.com/health/2019/10/24/racial-bias-medical-algorithm-favors-white-patients-over-sicker-black-patients.

[7] M. Evans, *New York Regulator Probes UnitedHealth Algorithm for Racial Bias.*

[8] "United Behavioral Health, United Healthcare Insurance Co., Plans to Pay $15.6M, Take Corrections After Federal, State Investigations," USDOL News Release, Aug. 12, 2021 (https://www.dol.gov/newsroom/releases/ebsa/ebsa20210812, last visited July 8, 2022).

24.     An     investigation     by     the     Department's Employee     Benefits     Security Administration found that – going back to at least 2013 – United reduced reimbursement rates for out-of-network mental health services, thereby overcharging participants for those services, and flagged participants undergoing mental health treatments for a utilization review, resulting in many denials of payment for those services in violation of ERISA.[9]

25.     Recently, Plaintiff and other Nevada clinicians sued United in Nevada state court, alleging United had wrongfully underpaid them for the emergency medical treatment.

26.     In November 2021, a Clark County jury agreed, unanimously finding that United had unjustly enriched itself at the clinicians' expense.

27.     The jury found by clear and convincing evidence that United had engaged in a scheme of "*oppression, fraud, or malice*" and that United's conduct constituted an unfair claims settlement practice under Nevada law.[10]

28.     The jury found United and United affiliates liable to the physician plaintiffs for $60 million in punitive damages.[11]

29.     Undeterred, United has continued its scheme to deny emergency clinicians their lawful payments.

---

[9] *Id.*

[10] *See* Special Verdict Form, *Fremont Emerg. Servs. (Mandavia) Ltd. v. United Healthcare Ins. Co.*, No. A-19-792978-B (Nev. Dist. Ct., Clark Co. Nov. 29, 2021) (true and correct copy attached as Exhibit 2 and incorporated as though fully set forth herein).

[11] *See* Special Verdict Form, *Fremont Emerg. Servs. (Mandavia) Ltd. v. United Healthcare Ins. Co.*, No. A-19-792978-B (Nev. Dist. Ct., Clark Co. Dec. 7, 2021) (true and correct copy attached as Exhibit 3 and incorporated as though fully set forth herein).

30.     Fremont now brings this action to end United's blatant disregard of its obligations under federal law and refusal to pay claims it knows to be covered and payable.

### UNITED'S "POLICY" AND ITS VIOLATION OF ERISA

31.     The wrongful scheme at issue here has three elements:

    a.   *first*, United fails to timely adjudicate Fremont's claims for emergency services within 30 days as required by federal law;

    b.   *second*, after wrongfully delaying adjudication, United denies coverage and payment on claims for emergency services, though it does not actually dispute the services are covered and payable emergency services; and

    c.   *third*, United bases its denials, on information and belief, on an algorithmic review of the claim forms whereby an algorithm denies Fremont's claims based on the diagnosis codes on the claim form – again, in violation of federal law. (The foregoing scheme is identified herein as the "Policy").

32.     Federal law requires Fremont's clinicians to examine and provide stabilizing treatment to all individuals who present at the emergency departments they staff, regardless of those individuals' insurance coverage or ability to pay for medical care.  *See* 42 U.S.C. §§ 1395a(a)-(b), (h).

33.     Correspondingly, United is obligated to provide coverage to its Members for the emergency care they receive without requiring the Members to obtain prior approval for the services.

34.     United must provide such coverage regardless of whether or not the emergency provider participates in United's network.  *See* 42 U.S.C. § 300gg-19a(b)(1); 42 U.S.C. § 18022.

35.     Under federal law, United is obligated to either make an initial payment for

emergency services or deny the claim, within 30 days of United's receipt of the claim. 29 U.S.C. § 1185e(a)(1)(C)(iv).

36.     Under federal law, United may not deny emergency claims solely on the basis of diagnosis codes.

37.     Under federal law, United may not force emergency providers to undertake the administrative burdens of filing appeals (whether or not United calls that burden an "appeal").

38.     After Fremont's clinicians render services to United's Members, Fremont submits a claim to United for reimbursement for those services.

39.     These claims are submitted electronically, with data compliant with the industry standard CMS 1500 claim form.

40.     Fremont's claims-billing practices are consistent with applicable law and governing industry standards.

41.     Fremont is neither required nor expected to submit medical records with their claims.

42.     The CMS 1500 claim form contains all the information United needs to process and pay Fremont's claims.

43.     Fremont completes the CMS 1500 claim form in accordance with the instructions set forth by the National Uniform Claim Committee ("NUCC"), which developed the CMS 1500.

44.     The NUCC instructions require Fremont to identify the services rendered by listing the corresponding code found in the Current Procedural Terminology ("CPT") codebook, published by the American Medical Association ("AMA").

45.     The services Fremont's clinicians render in an emergency department typically

constitute evaluation and management ("E/M") services.

46.     The corresponding CPT codes for E/M services in the emergency department generally range from 99281 to 99285.

47.     CPT codes 99281 through 99285 correspond to Emergency Department "Levels" 1-5, in ascending order of the complexity of the decision-making required and the extensiveness of the physician's history and physical examination.

48.     At all times material to this Complaint, the claims Fremont submitted to United for emergency medical services provided to United's Members were submitted in a manner consistent with applicable law and governing industry standards.

### UNITED'S REFUSAL TO PAY FOR EMERGENCY SERVICES ITS MEMBERS RECEIVED

49.     Under the Policy, United consistently and routinely fails to either (a) make an initial payment or (b) deny Fremont's claims within 30 days of their receipt.

50.     Rather, on information and belief, United improperly uses an algorithm and list of diagnosis codes to improperly target Fremont's claims and delay or deny payment.

51.     In furtherance of this scheme, United requests medical records that it claims it will use to conduct a pre-payment audit of the claims.

52.     This forces Fremont to file an "appeal," though it is not called an "appeal."

53.     United then "pends" adjudication of the claims – often well past the maximum 30-day timeframe – even though the claim forms contain all the information necessary for United to adjudicate the claim upon receipt.

54.     Moreover, under its Policy, after wrongfully *delaying* the adjudication of Fremont's claims, United then consistently *denies* coverage and payment on Fremont' claims for

emergency services even when United does not actually dispute that the services are covered, payable emergency services.

55.     United typically denies the claims by stating, without explanation: "Payer deems the information submitted does not support this level of service."

56.     United does not pay the portion of the claims that United does not dispute.

57.     Formally appealing the claims is futile, as United's decisions do not change.

58.     Instead, United instead compels Fremont to guess whether United considers a claim payable and then to submit a new claim at a Level that Fremont hypothesizes United might agree is appropriate.

59.     This creates a punishing claims experience designed to deter clinicians from pursuing their right to payment, leaving United in possession of the clinician's money.

60.     Faced with significant administrative burdens and impeded cash flow, clinicians, under duress, must choose between receiving no reimbursement at all and submitting under protest a claim lowered from Level 5 to Level 4.

**UNITED'S USE OF THE POLICY AGAINST ITS MEMBERS**

61.     United applied the unlawful Policy to claims Fremont submitted with respect to each of the Patients below (the "Patients"), as well as others similarly situated.

***Patient 1:  The Baby***

62.     Patient 1 (the "Baby"), a one-month-old, fell down a flight of stairs and was brought to the emergency department of Mountain View Hospital on January 31, 2022.

63.     A Fremont clinician performed a comprehensive examination on the Baby, took a comprehensive history, and ordered a CT scan and laboratory tests.

64.     The examination revealed extremely serious injuries including a subdural hematoma (bleeding around the brain), which can result in brain damage or even death.

65.     The Baby was admitted to the hospital's pediatric intensive care unit for further treatment.

66.     On February 16, 2022, Fremont timely submitted a claim to United for the services rendered to the Baby as a Level 5 emergency E/M service.

67.     On February 25, 2022, United responded, requesting medical records to complete a pre-payment audit of the claim.

68.     Fremont provided the requested records.

69.     On April 5, 2022, United inexplicably denied the claim and sent Fremont an electronic remittance advice that said only: "[P]ayer deems the information submitted does not support this level of service."

70.     On information and belief, the denial was based on an algorithmic review of the diagnoses on the claim form.

71.     On information and belief, United did not look at the medical records when it denied the claim.

72.     United did not pay a penny for the emergency treatment provided to the Baby by Fremont.

73.     On April 25, 2022, some three weeks after United's denial and almost three months after providing the treatment, Fremont submitted a new claim for the Level 5 service as a Level 4, in order to be paid at least something for the treatment.

74.     Fremont advised United in writing that it was changing the claim Level from a 5 to a 4 under protest, reserving the right to pursue the full amount on the original claim at the original Level.

75.     On May 13, 2022, approximately three and a half months after providing the treatment and three months after the claim was initially submitted, United finally adjudicated the claim as a covered Level 4 E/M service.  United then paid the claim at less than 20% of the amount billed.

76.     Thus, throughout this protracted and unlawful process, United knew the services Fremont had provided were covered, payable emergency services of at least a Level 4; however, United failed and refused to pay any amount for the claim for months.

77.     This failure and delay forced Fremont to incur substantial administrative burdens and cash-flow delays in order to receive even the arbitrarily reduced payment.

### *Patient 2:  Boy with a Ruptured Appendix*

78.     Patient 2, a thirteen-year-old, presented to the emergency department of Mountain View Hospital on February 4, 2021, with severe abdominal pain.

79.     A Fremont clinician performed a comprehensive examination on Patient 2, took a comprehensive history, and ordered laboratory tests and a CT scan.

80.     The examination revealed that Patient 2 (referred to at times below as "Boy with a Ruptured Appendix") was suffering from acute appendicitis and that his appendix had ruptured.

81.     A ruptured appendix is a condition, which, if left untreated, often results in death.

82.     The Boy with a Ruptured Appendix was admitted to the hospital for surgery.

83.     On February 18, 2021, Fremont timely submitted a claim to United for these services as a Level 5 emergency E/M service.

84.     On February 27, 2021, United responded, requesting medical records to complete a pre-payment audit of the claim submitted on behalf of the Boy with a Ruptured Appendix.

85.     Fremont provided the requested records.

86.     On May 25, 2021, United inexplicably denied the claim and sent Fremont an electronic remittance advice stating:  "[P]ayer deems the information submitted does not support this level of service."

87.     On information and belief, the denial was based on an algorithmic review of the diagnoses on the claim form.

88.     On information and belief, United did not look at the medical records when it denied the claim.

89.     United did not pay a penny for the emergency treatment Fremont provided.

90.     Fremont appealed the denial, which United rejected, again denying the claim.

91.     On January 20, 2022 – almost a year after providing the treatment, Fremont had still received $0 for the emergency services provided.

92.     On January 20, 2022, Fremont submitted a new claim for this Level 5 treatment to United as a Level 4 service, in order to be paid at least something for the treatment.

93.     Fremont advised United in writing that it was changing the claim Level from a 5 to a 4 under protest, reserving the right to pursue the full amount on the original claim at the original level.

94.     On or about March 1, 2022, more than a year after the initial claim was submitted, United adjudicated the claim as a covered Level 4 E/M service and paid it at approximately 30% of the amount billed.

95.     Thus, United at all times recognized the services were covered, payable emergency services as at least a Level 4, but United wrongfully denied payment on the claim for more than a year.

### *Patient 3:  Veteran with Heart Failure*

96.     Patient 3 is a 44-year-old man who sought treatment at the emergency department of Mountain View Hospital on October 19, 2021.

97.     Patient 3 told a Fremont clinician that, during the summer and fall of 2021, he had experienced progressively greater difficulty breathing after exertion.

98.     Patient 3 initially went to a local Veterans Affairs medical center for treatment, where a workup was done showing elevated troponin Levels.

99.     Elevated troponin is commonly associated with heart attacks.

100.    The Veterans Affairs medical center directed Patient 3 (identified below as "Veteran" or "Veteran with Heart Failure") to the emergency room.

101.    A Fremont clinician performed a comprehensive examination on the Veteran, took a comprehensive history, and ordered several laboratory tests and an EKG.

102.    The Fremont clinician determined that the Veteran was suffering from heart failure.

103.    Heart failure is a life-threatening condition in which the heart fails to pump sufficient blood to meet the body's needs.

104.    The Veteran was admitted to the hospital for further treatment of his failing heart.

105.    On November 4, 2021, Fremont timely submitted a claim to United for the services rendered to the Veteran as a Level 5 emergency E/M service.

106.    On November 13, 2021, United responded, requesting medical records to complete a pre-payment audit of the claim.

107.    Fremont provided the requested records.

108.    On December 21, 2021, United inexplicably denied the claim and sent Fremont an electronic remittance advice stating: "[P]ayer deems the information submitted does not support this level of service."

109.    On information and belief, the denial was based on an algorithmic review of the diagnoses on the claim form.

110.    On information and belief, United did not look at the medical records when it denied the claim.

111.    United did not pay a penny for the emergency treatment of the Veteran with Heart Failure.

112.    As of February 10, 2022, almost four months after providing the treatment, Fremont had still received $0 for the emergency services provided.

113.    On February 10, 2022, Fremont submitted a new claim for this Level 5 treatment to United as a Level 4 service, in order to be paid at least something for the treatment.

114.    Fremont advised United in writing that it was changing the claim Level from a 5 to a 4 under protest, reserving the right to pursue the full amount on the original claim at the original level.

115.    On March 15, 2022, some five months after the treatment and almost four months after the initial claim was submitted, United adjudicated the claim as a covered Level 4 E/M service and paid it at approximately 30% of the amount billed.

116.    Thus, United at all times, recognized the services were covered, payable emergency services as at least a Level 4, but United wrongfully denied payment on the claim for months.

**PLAINTIFF'S ERISA STANDING:  EXPRESS ASSIGNMENTS FROM PATIENTS**

117.    Each of the Patients had insurance through a self-funded health plan governed by ERISA, for which United was a third-party administrator ("TPA").

118.    Each of the Patients (or their legal representative) agreed to assign, and did assign, to Fremont their health plan and ERISA-based rights, claims, penalties, remedies, and benefits related to the emergency services they received from Fremont, including the right to pursue injunctive and declaratory relief as may be permitted by their health plans or ERISA.

119.    In this case, Fremont is choosing to assert its claims as an assignee of the Patient's rights, without waiver of its rights to pursue claims in its own right in a separate action.

120.    United received notice that the Patients had assigned their benefits to Fremont.

121.    Fremont billed the claims indicating its status as an assignee.

122.    United failed to assert any objection to the assignment after receiving the claims, in appeals, or during communications with Fremont.

123.    Upon information and belief, the Patients are still insured under plans administered by United, and both the Patients and Fremont will be irreparably harmed by United in the future if United is allowed to continue to refuse to pay and/or to deny claims for E/M emergency services as described above.

124.    With respect to all the claims, Fremont appealed United's improper adjudication and fully exhausted administrative remedies prior to filing this lawsuit or, alternatively, the exhaustion of administrative remedies would have been futile or is excused because exhausting

the administrative remedies would exacerbate the harm caused by United's failure to timely adjudicate the claims.

125.    Fremont has fulfilled all conditions precedent to bringing this action.

## COUNT I

### ERISA - FAILURE TO TIMELY PAY OR DENYCLAIMS FOR EMERGENCY SERVICES IN VIOLATION OF 29 U.S.C. § 1185e(a)(1)(C)(iv)

126.    Fremont incorporates by reference paragraphs 1-125 as if such paragraphs were fully stated herein.

127.    In this count, Fremont seeks injunctive relief pursuant to 29 U.S.C. § 1132(a)(3), which permits a member of an ERISA health plan to seek injunctive relief in response to actions and practices that violate 29 U.S.C. § 1185e(a)(1)(C)(iv)(I).   Fremont also seeks declaratory relief pursuant to 28 U.S.C. § 2201.

128.    Under 29 U.S.C. § 1185e(a)(1)(C)(iv)(I), a health plan providing coverage for services in a hospital emergency department must "not later than 30 calendar days after the bill for [emergency] services is transmitted by [a] provider or facility, send[ ] to the provider or facility, as applicable, an initial payment or notice of denial of payment . . . ."

129.    Fremont properly and timely submitted to United Claims for reimbursement of the emergency services that they rendered to the Patients, who are and were United Members.

130.    With respect to the Claims identified above, as well as numerous other similar claims, United failed to either make an initial payment or deny the Claims for emergency services that Fremont sent to United within 30 days of United's receipt of the Claims.

131.    Accordingly, United has violated 29 U.S.C. § 1185e(a)(1)(C)(iv)(I).

132.     Fremont and the Patients have been irreparably harmed by United's repeated, ongoing failure to pay or deny claims within 30 days in accordance with 29 U.S.C. § 1185e(a)(1)(C)(iv).

133.     The repeated, ongoing failure to act in a timely manner cannot be remedied by money damages.

134.     United's failure deprives Fremont and the Patients of the right to receive timely benefits or timely notice that United had denied benefits.

135.     Fremont is entitled to injunctive relief to enjoin United's continued application of the Policy, which is continuously in effect and will result in repeated unlawful acts on an ongoing basis, and which deprives of their rights the Patients and other members of the same ERISA plans.

136.     Fremont is also entitled to a declaration that the policy is unlawful.

137.     Fremont and the Patients have no adequate remedy at law because additional United members covered by ERISA plans will inevitably be treated by Fremont's clinicians, in light of Fremont's obligations under federal law to evaluate, examine, and treat all patients who come into an emergency room, regardless of the existence, or extent, of insurance coverage, and regardless of a patient's ability to pay for the care. 42 U.S.C. § 1395dd (EMTALA), the nature of United's business, patients' healthcare needs, and Fremont's vital role staffing many of Nevada's hospital-based emergency departments.

138.     Furthermore, Patients are at risk of future wrongful denials of benefits.  Unless its use is barred by court order, the Policy will continue to violate ERISA and federal law to the detriment of Fremont, Patients, and other members of ERISA plans administered by United.

139.   United will not be harmed by an injunction requiring its compliance with the law or a declaration that its Policy is unlawful.

140.   The balance of equities weighs in favor of Fremont.

141.   The injunction would not be adverse to or disserve the public interest. An injunction would promote equity and serve the public interest.

142.   Fremont is entitled to, and prays for, permanent injunctive relief requiring United to comply with 29 U.S.C. § 1185e(a)(1)(C)(iv) and to cease application of the Policy to Fremont and others similarly situated.

143.   Fremont is further entitled to, and prays for, a declaratory judgment stating that United's Policy is unlawful.

## COUNT II

### ERISA – VIOLATIONS OF PLAN TERMS
### 29 U.S.C. § 1132(a)(3), 29 C.F.R. § 2590.715-2719A(b)

144.   Fremont incorporates by reference paragraphs 1-143 as though such paragraphs were fully stated herein.

145.   In this count, Fremont seeks injunctive relief pursuant to 29 U.S.C. § 1132(a)(3), which permits a member of an ERISA health plan to seek injunctive relief in response to actions and practices that violate the terms of ERISA-governed health plans.  Fremont also seeks declaratory relief pursuant to 28 U.S.C. § 2201.

146.   Fremont asserts this count in connection with the claims for emergency medical services Fremont rendered to the Patients, who have health benefit plans governed by ERISA and administered by United.

147.   With respect to the claims identified above, as well as numerous other equivalent claims, United breached the terms of the ERISA plans by denying coverage and payment for

emergency E/M services and treatment rendered by Fremont, which are required to be covered by law.

148.    United's Policy results in covered claims for emergency services being improperly denied in violation of the terms of the ERISA-governed health plans and will cause claims to be improperly denied in the future, even when United recognizes that the services rendered are covered, payable emergency services.

149.    Fremont and Patients have been, and will continue to be, irreparably harmed by United's ongoing breaches of the plan terms.

150.    Fremont and Patients have no adequate remedy at law because the nature of United's business, Patients' healthcare needs, and Fremont's business ensures that additional United members covered by these ERISA plans will be treated by Fremont.

151.    Furthermore, Patients and thousands of others under the same facts and circumstances are at risk of continued wrongful denials of benefits in the future.  The Policy will continue to violate ERISA and federal law to the detriment of Fremont, Patients, and other members with ERISA plans administered by United.

152.    United will not be harmed by an injunction requiring its compliance with the law or a declaration that its Policy is unlawful.  The balance of equities weighs in favor of Fremont.

153.    The injunction would not be adverse or disserve the public interest.  An injunction would promote equity and serve the public interest.

154.    Fremont is entitled to, and prays for, permanent injunctive relief requiring United to cover and pay for emergency services and care as required by applicable law and to cease application of the Policy to Fremont.

155.    Fremont is further entitled to, and prays for, a declaratory judgment stating that United's Policy is unlawful.

## COUNT III

### ERISA – DENIALS OF CLAIMS FOR EMERGENCY SERVICES ON THE BASIS OF DIAGNOSIS CODES IN VIOLATION OF 29 U.S.C. § 1185e(a)(1)(C)(iv)

156.    Fremont incorporates by reference paragraphs 1-155 as if such paragraphs were fully stated herein.

157.    In this count, Fremont seeks injunctive relief pursuant to 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) permits a member of an ERISA health plan to seek injunctive relief in response to actions and practices that violate 29 U.S.C. § 1185e(a)(1)(C)(iv)(I).

158.    Fremont also seeks declaratory relief pursuant to 28 U.S.C. § 2201.

159.    United's Members sought emergency services from Fremont, and Fremont rendered such services.

160.    Fremont timely and properly submitted for reimbursement the claims for those services.

161.    Under the Federal No Surprises Act and ERISA, United is required to cover and pay for all emergency services rendered to United's Members, without requiring prior authorization and without regard to whether a physician is in contract with United. *See* 42 U.S.C. § 300gg-111(a)(1).

162.    ERISA plans are prohibited by law from denying claims for emergency services based on the diagnoses or symptoms listed on the claim form.

163.    Under the No Surprises Act, whether a patient is suffering an "emergency medical condition" (and therefore received "emergency services") depends not on the actual ultimate diagnosis, but on whether the patient's symptoms are such that a "prudent layperson" could

"reasonably expect" substantial harm or jeopardy to the patient's health absent immediate medical attention.  *See* 42 U.S.C. § 300gg-111(a)(3).

164.    ERISA plans' obligations to cover emergency services as defined under the No Surprises Act prohibit them from denying or limiting payment on claims for emergency services based on the diagnoses on the claim form.

165.    Insurers are required by law to consider all relevant information provided before denying a claim for emergency services.

166.    The determination of whether to pay or deny a claim for emergency services must be made on a case-by-case basis.  *See* 86 Fed. Reg. 36872-01 (July 23, 2021).

167.    On information and belief, United denied payment on the Claims by reason of an algorithmic review of the diagnoses on the claim form and has therefore failed to cover and pay for emergency services.

168.    On information and belief, United failed to consider all relevant information provided by Fremont with respect to the Claims before denying payment on the claims, including the medical records submitted by Fremont at the request of United.

169.    Fremont and the Patients have been and will continue to be irreparably harmed by United's ongoing violations of the No Surprises Act.

170.    Fremont and Patients have no adequate remedy at law, because the nature of United's business, the Patients' healthcare needs, and Fremont's business ensures that additional United members covered by these ERISA plans will be treated by Fremont.

171.    Furthermore, Patients are at risk of continued wrongful denials of benefits in the future.

172.     United will not be harmed by an injunction requiring its compliance with the law or a declaration that its Policy is unlawful.

173.     The balance of equities weighs in favor of Fremont.

174.     The injunction would not be adverse or disserve the public interest.  An injunction would promote equity and serve the public interest.

175.     Fremont is entitled to, and pray for, permanent injunctive relief requiring United to cover and pay for emergency services and care as required by applicable law and to cease application of the Policy to Fremont.

176.     Fremont is further entitled to, and pray for, a declaratory judgment stating that United's Policy is unlawful.

## **PRAYER FOR RELIEF**

WHEREFORE, Fremont prays that the Court award the following relief:

A.  Injunctive relief to prevent United's continued use of the Policy in any way, regarding any claim;

B.  Injunctive relief with regard to all claims submitted by Fremont to United or any of its affiliates requiring United an initial payment or denial within thirty (30) days, as required by 29 U.S.C. § 1185e(a)(1)(C)(iv);

C.  Injunctive relief requiring United to cover and pay claims for emergency medical services submitted by Fremont, as required by the terms of ERISA-governed health plans;

D.  Injunctive relief requiring United to consider all relevant information in its adjudication of claims for emergency services submitted by Fremont, and precluding United from adjudicating claims for emergency services on the basis of an algorithmic review of diagnosis codes;

E.  A declaratory judgment that the Policy is illegal;

F.  Reasonable attorney's fees and costs as permitted by 29 U.S.C. § 1132(g)(1); and

G.  Such other further relief that the Court deems just and reasonable.

DATED this 13th day of July, 2022.

MESSNER REEVES LLP

By */s/ Renee M. Finch, Esq.*
    Renee Finch

LASH & GOLDBERG LLP

By */s/ Justin C. Fineberg, Esq.*
    Justin C. Fineberg
    Nicholas A. Ortiz
    Jonathan E. Siegelaub
    Benjamin R. Shiekman

**INDEX OF EXHIBITS**

| EXHIBIT | TITLE | PAGE RANGE |
|---|---|---|
| Exhibit 1 | Letter from AMA Specialty Societies to Brian Thompson, CEO or UnitedHealthcare, dated June 16, 2021 | 1.001 – 1.003 |
| Exhibit 2 | Special Verdict Form, *Fremont Emerg. Servs. (Mandavia) Ltd. v. United Healthcare Ins. Co.*, No. A-19-792978-B (Nev. Dist. Ct., Clark Co. Nov. 29, 2021) | 2.001 – 2.010 |
| Exhibit 3 | Special Verdict Form, *Fremont Emerg. Servs. (Mandavia) Ltd. v. United Healthcare Ins. Co.*, No. A-19-792978-B (Nev. Dist. Ct., Clark Co. Dec. 7, 2021) | 3.001 – 3.002 |