1  James J. Pisanelli, Esq., Bar No, 4027
2  Debra L. Spinelli, Esq., Bar No. 9695
   Brianna Smith, Esq., Bar No. 11795
3  PISANELLI BICE
   400 South 7th Street, Suite 300
4  Las Vegas, Nevada 89101

5  Jeffrey S. Gleason (*pro hac vice pending*)
   Jamie R. Kurtz (*pro hac vice pending*)
6  Charlie C. Gokey (*pro hac vice pending*)
   ROBINS KAPLAN LLP
7  800 LaSalle Avenue, Suite 2800
   Minneapolis, Minnesota 55402
8
   Jessica M. Pettit (*pro hac vice pending*)
9  ROBINS KAPLAN LLP
   2049 Century Park East, Suite 3400
10 Los Angeles, California 90067

11 *Attorneys for Defendants*
   *United HealthCare Insurance Company and*
12 *United HealthCare Services*

13

14                    **UNITED STATES DISTRICT COURT**

15                         **DISTRICT OF NEVADA**

16

17 FREMONT EMERGENCY SERVICES          Case No. 2:22-cv-01118-CDS-BNW
   (SCHERR), LTD,
                        Plaintiff,
18
         v.
19 UNITED HEALTHCARE INSURANCE         **DEFENDANTS' MOTION**
   COMPANY AND UNITED                  **TO DISMISS**
   HEALTHCARE SERVICES,
20 Defendants.                         **ORAL ARGUMENT REQUESTED**

21

22       Defendants United HealthCare Services, Inc., and UnitedHealthcare Insurance Company

23 (collectively, "United") hereby move to dismiss the complaint filed by Fremont Emergency Services

24 (Scherr), Ltd. ("Fremont") in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and

25 12(b)(6), and state as follows in support.

26 **I.    INTRODUCTION**

27       Despite the caption, this case is merely the latest front in an ongoing dispute between United

28 and TeamHealth, a private-equity backed conglomerate that controls medical groups staffing nearly

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1

a fifth of the emergency rooms in the United States. Those medical groups include Fremont, TeamHealth's frequent pawn in litigation. The Court need not take United's word for it: TeamHealth itself issued a press release announcing the filing of this lawsuit and claiming credit. (*See* Ex. A at A.001 ("TeamHealth Continues Nationwide Fight Against UnitedHealthcare, Seeking Justice for Patients and Clinicians").)

This case is nothing more than TeamHealth's response to a lawsuit filed by United last year, in which United seeks to hold TeamHealth accountable for its aggressive and unlawful pursuit of profit. (*See* Ex. B.) As relevant here, TeamHealth's illegal tactics include a classic form of insurance fraud called upcoding. Upcoding occurs when a provider deliberately exaggerates the nature and degree of treatment rendered when submitting a claim to an insurer to deceive the insurer into overpaying.

Between 2020 to 2021, United reviewed medical records for over 47,000 claims TeamHealth submitted on behalf of medical groups like Fremont. It discovered that TeamHealth had systematically upcoded claims for emergency services like those at issue here in roughly **75%** of cases, causing United to overpay by many millions of dollars. As a result, in October 2021, United sued TeamHealth in the U.S. District Court for the Eastern District of Tennessee, bringing fraud and related claims. In May, the court in the Tennessee case denied TeamHealth's motion to dismiss in its entirety. *See United HealthcareServices, Inc. v. Team Health Holdings, Inc.*, No. 3:21-CV-00364, 2022 WL 1481171 (E.D. Tenn., May 10, 2022). Not coincidentally, TeamHealth launched this suit two months later. This action is not about Fremont, and it is certainly not about the three patients referenced in Fremont's complaint. It is instead a haphazard attempt to litigate TeamHealth's primary defense in the Tennessee action—that United is improperly processing and "downcoding" its claims under an unlawful policy—using a more sympathetic party as a front, and in what TeamHealth views as a more favorable forum.

This is sufficient grounds to dismiss or stay this action pursuant to the first-to-file rule. Regardless, the complaint is fatally flawed. Fremont brings suit under ERISA, asserting rights ostensibly assigned to it by three patients under three ERISA plans. But Fremont does not identify any actual assignment or any specific ERISA plan. This by itself dooms Fremont's claims. Even if

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Fremont had sufficiently pled those facts, Fremont seeks relief that the patients who ostensibly assigned their rights to Fremont could not have sought themselves—namely, sweeping, nationwide prospective relief completely untethered to the limited rights Fremont claims to possess by virtue of three patient assignments. Fremont's Complaint is effectively a class action without a class. And even if Fremont had standing to bring these ERISA claims, its claims would fail on the merits. The Court should dismiss Fremont's complaint with prejudice.

## II.      BACKGROUND

### A.      TeamHealth and its Preexisting Litigation with United.

TeamHealth is a collection of corporate entities that operate under the TeamHealth trade name, and which provide emergency room staffing and billing services through affiliated medical groups. (*See* Ex. C at C.002 n.1.) Over the last decade, TeamHealth has become a dominant player in the market for emergency services. It now staffs over 3,400 emergency medical facilities in 47 states and employs over 18,000 healthcare professionals, effectively controlling approximately 17% of the emergency medical services market in the United States. (*See* Ex. B at B.010; Ex. C at C.007-008.) TeamHealth was acquired by the private equity firm Blackstone in 2017 for $6.1 billion. (*See id.*)

TeamHealth controls the administrative and business functions of its affiliated medical groups, including billing insurers for their medical services, which TeamHealth handles through non-medical staff employed by a subsidiary called HCFS Health Care Financial Services, LLC. (*See* Ex. B at B.005-006; Ex. C at C.005.) Physicians employed by TeamHealth's medical groups have no say in or knowledge of the amounts TeamHealth bills in their name. (*See* Ex. B at B.011; Ex. C at C.008.)

Fremont is one of TeamHealth's many affiliates. (*See, e.g.*, Ex. A.). According to public records, Fremont's owners and officers are all TeamHealth executives based in TeamHealth corporate offices in Tennessee and California. (*See* Ex. D.) Fremont is one of many entities through which TeamHealth has waged a multi-front legal battle with insurers, including United, over the past five years. (*See, e.g.*, Ex. C at C.002.)

This case is a direct response to a lawsuit United filed last year concerning TeamHealth's fraudulent billing practices. *See UnitedHealthCare Services, Inc. et al v. Team Health Holdings, Inc. et al.*, No. 3:21-cv-00364 (E.D. Tenn.). That case concerns a form of insurance fraud called "upcoding." Upcoding occurs when a healthcare provider submits a claim to an insurer utilizing an improper Current Procedural Terminology (CPT) code, misrepresenting the nature or degree of treatment rendered and exaggerating its complexity and expense. The provider thus deceives the insurer into overpaying.

As explained in Fremont's Complaint, emergency services are billed to insurers using sequentially numbered CPT codes 99281 to 99285. (Compl. ¶ 46.) These five codes correspond to emergency department levels of care, with level 1 being the lowest severity and level 5 being the highest. (*Id.* ¶ 47.) Insurers, including United, generally pay significantly more for claims coded as 99285 or 99284 as compared to lower codes. (*See* Ex. B at B.013; Ex. C at C.010.)

TeamHealth has faced allegations of upcoding over the last several years from insurers and whistleblowers—in particular, allegations that TeamHealth submitted claims utilizing CPT codes 99285 and 99284 when it clearly should have utilized lower CPT codes.[1] Indeed, TeamHealth recently paid the federal government $42.5 million to settle related allegations of upcoding under the False Claims Act. (*See* Ex. E.) TeamHealth's aggressive billing behavior prompted United to begin a pre-payment review of claims submitted by TeamHealth utilizing those CPT codes, which included requesting medical records to determine whether TeamHealth upcoded those claims. When the medical records submitted by TeamHealth did not support the level of service billed, United denied those claims without prejudice to TeamHealth resubmitting them utilizing the proper CPT code. This appears to be the "Policy" referenced in Fremont's complaint (although Fremont's allegations do not accurately describe the prepayment review process). (Compl. ¶ 31.) Indeed, TeamHealth's press release concerning this litigation explicitly confirms that it stems from "United's Prepayment Review Program." (Ex. A at A.002). As discussed below, the gravamen of

---

[1] TeamHealth has been sued by other insurance companies who have discovered the same fraudulent practices. *Celtic Insurance Co. v. Team Health Holdings, Inc., et al.*, Case No. 3:20-cv-00523 (E.D. Tenn. Dec. 10, 2020).

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Fremont's complaint is that United unjustly screened three specific claims and determined them to have been upcoded.

The result of United's investigation was a lawsuit filed in the U.S. District Court for the Eastern District of Tennessee on October 27, 2021. (*See* Ex. B.) United alleges that, in reviewing claims submitted by TeamHealth's out-of-network medical groups (including Fremont), United found that TeamHealth had upcoded roughly **75%** of claims coded as 99285. (*See id.* at B.016-023.) United further alleges that, based on the rate of upcoding it found through its review, United has overpaid on claims submitted by TeamHealth by many millions of dollars since 2016. (*See id.* at B.0026-0028). The court in the Tennessee action denied TeamHealth's motion to dismiss United's complaint in its entirety roughly two months before Fremont filed this case. *See United HealthCare Services, Inc. v. Team Health Holdings, Inc.*, No. 3:21-CV-00364, 2022 WL 1481171 (E.D. Tenn., May 10, 2022).

One of TeamHealth's defenses in the Tennessee action, if not its primary defense, is that United has improperly processed and evaluated claims TeamHealth submitted on behalf of medical groups like Fremont and engaged in unlawful "downcoding" of these claims. Indeed, TeamHealth specifically references United's treatment of claims submitted by Fremont twice in its answer to United's complaint in setting out this defense. (*See* Ex. C at C.002, C.027.) Moreover, TeamHealth is seeking substantial discovery in the Tennessee action into what Fremont's complaint deems United's "Policy" and United's prepayment review of TeamHealth claims, including United's evaluation and payment of claims like those at issue here, its purported use of an algorithm in this process, and its alleged practice of "downcoding" claims like those at issue here. (*See* Ex. F at F.002-005, F.010.)

**B.    Fremont's Follow-On Litigation.**

Fremont brings three causes of action under ERISA, 29 U.S.C. § 1132(a)(3), alleging that United (1) violated the No Surprises Act by taking more than 30 days to pay claims; (2) violated unspecified plan terms by denying unspecified covered benefits; and (3) violated the No Surprises Act by allegedly utilizing an algorithm to evaluate and pay claims. It seeks solely prospective injunctive and declaratory relief.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

5

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Fremont does not bring these claims "in its own right," but rather as the purported "assignee" of rights belonging to three patients. (Complaint ¶¶ 119; *see also id.* ¶¶ 62-116.) Despite this allegation, Fremont does not attach or even plead the assignments it allegedly received. Instead, it simply asserts that each patient assigned to Fremont "their health plan and ERISA-based rights, claims, penalties, remedies, and benefits related to the emergency services they received from Fremont, including the right to pursue injunctive and declaratory relief as may be permitted by their health plans or ERISA." (*Id.* ¶ 118.)

Fremont alleges that each of these Patients had insurance through a self-funded health plan governed by ERISA, for which United was a third-party administrator. (*Id.* ¶ 117.) But as with the purported assignments, Fremont does not identify the health plans or their terms.

Fremont alleges that each Patient received emergency services treatment from Fremont, (*id.* ¶¶ 63-64, 79, 101-02), and that Fremont timely submitted a claim to United coded as level 99285. (*Id.* ¶¶ 66, 83, 105). Fremont further alleges that United denied coverage for each level 5 claim, (*id.* ¶¶ 69, 86, 108), that Fremont resubmitted each claim as a level 4 claim "under protest" and reserving the right to pursue the full amount of the original claim, (*id.* ¶¶ 73-74, 92-93, 113-14), and that United then paid each level 4 claim, albeit at an amount below what Fremont billed. (*Id.* ¶ 75, 94, 115.) Fremont acknowledges that United requested medical records for each of the patients (*id.* ¶¶ 67, 84, 106), but alleges "on information and belief" that United instead based its denial of the level 5 claims on an algorithm. (*Id.* ¶¶ 70, 88, 110.) United allegedly uses this algorithm specifically to "target Fremont's claims." (*Id.* ¶ 50.) Fremont alleges that United delayed and underpaid these claims pursuant a three part "Policy" maintained by United under which United (1) fails to adjudicate claims within 30 days; (2) denies coverage and payment; and (3) bases its denial on an algorithm. (*Id.* ¶ 31.)[2]

Fremont does not seek any relief with respect to the three claims as to which it ostensibly received assignments of benefits. Nor does it seek relief that would redress any current or future harm to the three patients whose rights it purports to assert. Instead, Fremont seeks nationwide

---

[2]    While this is not an issue to be resolved at the pleading stage, there is absolutely no factual basis for Fremont's allegations. United assumes the truth of Fremont's allegations solely for purposes of the instant motion pursuant to Federal Rule of Civil Procedure 12(b)(6).

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

injunctive and declaratory relief with respect to *other* claims, submitted by *other* members, under *other* ERISA and non-ERISA plans, ostensibly to prevent harm to "United's [] members" generally, as well as "to Fremont and other healthcare providers." (*Id.* at 4:1-2.) Fremont thus requests injunctive and declaratory relief precluding United from applying its purported "Policy" to Fremont, to Fremont and "others similarly situated," to Fremont "or any of its affiliates," or to any healthcare provider, in any state, submitting claims under any plan. (*See* Compl. Prayer for Relief.) Because Fremont seeks injunctive relief to remedy alleged harm to itself and other healthcare providers, Fremont's allegations focus almost exclusively on potential harm to Fremont and unspecified third parties. (*See, e.g.*, *id.* ¶¶ 137-138, 151.)

## III.  LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must provide more than "labels and conclusions" or a formulaic recitation of the elements of cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570)). While the court must accept as true all material allegations in the complaint, it need not accept as true unreasonable inferences, nor legal conclusions case presented as factual allegations. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual," and "[i]n a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) "Because standing pertains to a federal court's subject-matter jurisdiction under Article III, it is properly raised in a motion to dismiss under Rule 12(b)(1)." *Shahinian v. Kimberly-Clark Corp.*, No. CV 14-8390, 2015 U.S. Dist. LEXIS 92782, at *6 (C.D. Cal. July 10, 2015). The plaintiff bears the burden of "alleging specific facts" to demonstrate standing. *Schmier v. United States Court of Appeals*, 279 F.3d 817, 821 (9th Cir. 2002).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**IV.    ARGUMENT**

    **A.    <u>The Court should dismiss or stay this case under the first-to-file rule</u>**.

    This case represents an effort by TeamHealth, the entity that controls Fremont, to find a more favorable front and forum to litigate issues raised in a separate lawsuit. This would be apparent even if TeamHealth hadn't specifically referenced Fremont repeatedly in its answer in that parallel litigation. The Court should dismiss or stay this case under the first-to-file rule.

    "[A] district court [may] decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). "The court looks to three principal factors in applying the first-to-file rule: (1) the chronology of the two actions; (2) whether the parties are the same; and (3) whether the issues are the same." *Holly Decorations v. Christmas By Krebs Corp.*, No. 308CV00205LRHVPC, 2008 WL 11403191, at *2 (D. Nev. Aug. 8, 2008) (citing *Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003)).

    Here, all three factors are met. First, the Tennessee lawsuit predates this one by months. (*See* Ex. B at B.055 (noting a filing date of October 27, 2021).) Indeed, this lawsuit appears to be a response to the denial of TeamHealth's motion to dismiss in that case.

    Second, the parties here are at least "substantially similar." *King v. Standard Metals Processing, Inc.*, No. 2:14-CV-751 JCM NJK, 2014 WL 6908497, at *5 (D. Nev. Dec. 9, 2014). As discussed above, TeamHealth controls Fremont. Fremont's owners and officers are TeamHealth executives based outside of Nevada. TeamHealth itself coded and billed each of the three claims at issue in this case without involvement or oversight by any physician affiliated with Fremont. Indeed, if it were not already clear, TeamHealth made a press release announcing the filing of this litigation declaring itself to be the responsible party, titled "*TeamHealth* Continues Nationwide Fight Against UnitedHealthcare, Seeking Justice for Patients and Clinicians." (*See* Ex. A at A.001 (emphasis added).)

    Third, this case raises the same factual issues raised by TeamHealth's defense in the Tennessee case. "The sameness requirement does not mandate that the two actions be identical," but merely requires a showing that "resolution of the claims in each case will turn on a [shared]

determination of fact." *King*, 2014 WL 6908497, at *4. Fremont's claims here and TeamHealth's defense in the Tennessee case both turn on the same alleged improprieties in United's processing of claims coded and submitted by TeamHealth. TeamHealth alleges the same purported unlawful "Policy" in the first-filed case and seeks substantial discovery concerning it. TeamHealth has cited United's treatment of Fremont's claims in particular as part of the basis for its defense in the Tennessee case. And while Fremont does not provide sufficient information to identify the three specific claims at issue in its complaint, TeamHealth's upcoding of Fremont's claims generally is at issue in both cases. Indeed, TeamHealth's press release announcing this litigation states that the case arises from "United's Prepayment Review Program" of TeamHealth's claims, which also serves as the basis for United's claims in the Tennessee case. (Ex. A at A.002.) This case is simply an effort by TeamHealth to litigate these issues on terms, and in a forum, it deems more favorable.

Courts, including in this district, regularly dismiss later-filed cases when these three factors are satisfied. *See, e.g.*, *King, No.*, 2014 WL 6908497, at *5 (granting a motion to dismiss where an earlier case involved substantially similar issues and parties). This includes instances in which a defendant in the first-filed case seeks to litigate its defenses as a plaintiff in a second-filed lawsuit. *See, e.g.*, *Pacesetter Sys. v. Medtronic, Inc.*, 678 F.2d 93, 97 (9th Cir. 1982); *Vimo, Inc. v. Norvax Corp.*, No. C-07-01897 RMW, 2007 U.S. Dist. LEXIS 113137, at *3-4, *8 (N.D. Cal. June 22, 2007). This Court should do the same, or at the very least stay this duplicative litigation pending resolution of United's first-filed case.

### B.     Fremont fails to allege any assignment of rights under any ERISA plan.

Even if the Court were inclined to permit this case to proceed in parallel with the Tennessee litigation, Fremont fails to establish that it has standing to bring its claims. Fremont cannot bring ERISA claims on its own behalf. It is settled law that "health care providers are not 'beneficiaries' within the meaning of ERISA's enforcement provisions." *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868, 874 (9th Cir. 2017); *see also Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.* 770 F.3d 1282, 1292 (9th Cir. 2014) ("a non-participant health care provider . . . cannot bring claims for benefits on its own behalf"). Fremont can only bring

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

its ERISA claims "derivatively, relying on its patients' assignments of their benefits claims." *DB Healthcare, LLC*, 852 F.3d at 874.

Despite that, Fremont does not plead facts to establish that it received an assignment. Fremont instead offers the bare legal conclusion that the three patients at issue assigned it rights sufficient to confer standing. That is insufficient in any case, and all the more so where, as here, Fremont seeks broad, prospective equitable relief.

Fremont bears the burden to plead facts sufficient to "establish[] the existence of properly assigned claims to satisfy [its] burden of showing that it ha[s] standing to sue under ERISA." *Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV154525JLLJAD, 2015 WL 6082299, at *3 (D.N.J. Oct. 15, 2015). "[A] conclusory statement merely alleging that a provider was assigned plan benefits from its patients does not plausibly demonstrate standing." *Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, 2017 WL 751851 at *5 (D.N.J. Feb. 27, 2017). Yet this "conclusory statement" is all that Fremont provides. Fremont does not attach or quote the purported assignment. Fremont simply asserts that "[e]ach of the Patients (or their legal representative) agreed to assign, and did assign, to Fremont their health plan and ERISA-based rights, claims, penalties, remedies, and benefits related to the emergency services they received from Fremont, including the right to pursue injunctive and declaratory relief as may be permitted by their health plans or ERISA." (Compl. ¶ 118.) The Court need not accept such "legal conclusions presented as factual allegations." *Sprewell*, 266 F.3d at 988.

Fremont's failure to allege the actual language of the supposed assignment warrants dismissal. Without "any underlying facts pertaining to this alleged assignment[,] [i]n particular . . . any of the specific language of the assignment, [or] . . . the assignment of benefit document itself[,] the Court is left with nothing more than conclusory recitations of the legal standard, which is insufficient under *Iqbal* and *Twombly*." *Cohen*, 2015 WL 6082299, at *3. The Court must have "at least one example—through quotation or attachment—of an assignment of benefits that the Court can determine whether it is valid." *Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.*, No. 820CV00102, 2022 WL 757315, at *4 (C.D. Cal. Feb. 2, 2022); *see also Creative Care, Inc. v. Connecticut Gen. Life Ins. Co.*, No. CV169056, 2017 WL 5635015, at *3 (C.D. Cal.

July 5, 2017) ("In short, because CCI does not plead sufficient factual allegations about the assignments, the Court rejects CCI's conclusion that it has a derivative right to sue for benefits under ERISA on behalf of the Patients."); *Cty. of Monterey v. Blue Cross of Cal.*, No. 17-CV-04260-LHK, 2019 U.S. Dist. LEXIS 13392, at *17 (N.D. Cal. Jan. 28, 2019) ("The Court agrees with Anthem that, at bare minimum, Natividad should allege the specific language of the assignment itself."). "In the absence of factual allegations [concerning the scope of assignment], there is no way for the Court to determine whether Plaintiffs actually have standing to sue under ERISA." *Cohen*, 2015 WL 6082299, at *3.

Fremont's failure is particularly telling here, where there are only three purported assignments at issue, and including the assignments or assignment language would not impose a burden on Fremont. "[I]t is fair to assume that [Fremont] know[s] what [its] own assignment forms provide." *Franco v. Connecticut Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 810 (D.N.J. 2011), *aff'd in part, vacated in part, remanded*, 647 F. App'x 76 (3d Cir. 2016).

Importantly, "[n]ot all ERISA assignments convey the same rights." *Rojas v. CIGNA Health & Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015). To determine the scope of an assignment, a court "look[s] at the language and context of the authorization[ ]." *DB Healthcare, LLC*, 852 F.3d at 876. "Assignment agreements are generally interpreted narrowly, and 'the scope of an assignment cannot exceed the terms of the assignment agreement itself.'" *Air Evac EMS Inc. v. USAble Mut. Ins. Co.*, No. 4:16-CV-00266 BSM, 2018 U.S. Dist. LEXIS 88919, at *11 (E.D. Ark. May 29, 2018) (quoting *Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 851-52 (11th Cir. 2013)). Fremont must therefore plead facts sufficient to allow the court to determine if the claims are within the scope of the assignment. Fremont has not done this.

The specific assignment language is critical here because Fremont brings equitable claims, which are typically not covered by even broad assignment language in this context. In *Spinedex Physical Therapy*, 770 F.3d at 1292, for example, the plaintiff provider argued that the inclusion of the word "benefits" in an assignment that stated "[t]his is a direct assignment of my rights and benefits under this policy," assigned the right to bring a claim for breach of fiduciary duty under ERISA Section 1132(b)(3). The Ninth Circuit disagreed, explaining that "[t]he entire focus of the

Assignment [was] payment for medical services." *Id.* The Eighth Circuit relied on *Spinedex* to reach a similar conclusion in *Air Evac EMS, Inc. v. USAble Mut. Ins. Co.*, 931 F.3d 647 (8th Cir. 2019). In *Air Evac EMS*, the plaintiff provider brought claims for injunctive and other equitable relief under the same section of ERISA at issue here, relying on an assignment that provided:

> [Patient] completely assigns to [plaintiff] <u>all</u> rights to (and related or associated with) any benefit claims and/or payments due from any third-party payor as reimbursement or payment for the Services, including but not limited to the rights to pursue administrative claims, request documents, receive payment and pursue litigation in order to obtain payment. *Id.* at 650 (emphasis in original).

Despite the broad language of the assignment, the Eighth Circuit explained that, "[g]iven the context of the assignment," it was limited to "rights related to obtaining payment, not equitable relief." *Id.* at 651. And in *DaVita Inc. v. Amy's Kitchen, Inc.*, the Ninth Circuit likewise considered a broad assignment of "<u>any</u> cause of action," but explained that in the context of the entire clause and document, "the natural reading of that sentence is that [the patient] assigned all possible causes of action for the *payment of benefits.*" 981 F.3d 664, 678–79 (9th Cir. 2020).

In sum, it is rare that a patient assigns a provider *any* right to seek even modest equitable relief under ERISA. Given the extraordinary nature of the equitable claims Fremont brings, it is extremely unlikely that the patients at issue assigned Fremont the right to bring them.

Indeed, even Fremont's conclusory gloss on what the patients at issue assigned fails to cover the claims at issue here. Fremont alleges that the patients assigned their rights "*related to the emergency services they received from Fremont.*" (Compl. ¶ 118 (emphasis added).) While Fremont complains about the timing and amount of United's payment for those services, Fremont does not seek any relief related to any claim for those services. Rather, Fremont seeks only relief related to hypothetical *future* claims for *other* services performed for *other* patients. As discussed below, the members at issue themselves lacked the right to bring such claims, which presents independent grounds for dismissal. But even if those members could bring such claims, there is no indication they effectively agreed to be class action representatives in a crusade to prevent United from applying its alleged "Policy" to claims submitted by third parties nationwide.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**C.**     <u>Fremont fails to allege or identify any ERISA plan.</u>

Much like Fremont has failed to plead an assignment, it has not identified any ERISA plan under which it obtained an assignment. A "complaint fails to state a claim under [ERISA]" where "it does not identify[ ] . . . any ERISA plan, apart from vague references to anonymous patients who allegedly assigned rights to [a provider]." *Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.*, 805 F. App'x 530, 531 (9th Cir. 2020); *see also Forest Ambulatory Surgical Associates, L.P. v. United HealthCare Ins. Co.*, No. 10–CV–04911, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011) ("Failure to identify the controlling ERISA plans makes a complaint unclear and ambiguous."); *Cnty. of Monterey v. Blue Cross of California*, No. 17-CV-04260, 2019 WL 343419, at *5 (N.D. Cal. Jan. 28, 2019) (holding a complaint to deficiently where it lacked "specific claims, dates, explanations of benefits, and the ERISA plan provisions at issue").

This is a pure ERISA action. There are a maximum of three ERISA plans at issue, which form the crux of this dispute. It should be easy for Fremont to identify them. But Fremont instead rests on precisely the sorts of "vague references to anonymous patients who allegedly assigned rights to [a provider]" that are insufficient as a matter of law. *Glendale Outpatient Surgery Ctr.*, 805 F. App'x at 531. It contends that United violated unidentified terms of unidentified plans in a conclusory fashion. Without more, United cannot meaningfully evaluate its defenses at the pleading stage—for example, whether anti-assignment clauses in the plans at issue bar this action. *See, e.g., MC1 Healthcare, Inc. v. United Health Grp., Inc.*, No. 3:17-CV-01909 (KAD), 2019 U.S. Dist. LEXIS 76515, at *18-19 (D. Conn. May 7, 2019) ("Without knowing whose rights Mountainside purports to assert, or the plans under which those rights allegedly derive, United does not have fair notice as to the claims asserted and cannot defend the claims in a meaningful or orderly manner."). This provides independent grounds for dismissal.

**D.**     <u>Fremont lacks standing to bring the claims at issue because the patients whose rights it allegedly obtained through assignment could not have brought them.</u>

When a provider receives an assignment under ERISA, "'the assignee stands in the shoes of the assignor' and may raise only those claims that the insured-assignor could raise in a direct action." *Cedars-Sinai Med. Ctr. v. Mass. Mut. Life Ins. Co.*, No. 94-55065, 1995 U.S. App. LEXIS 27693,

at *6-7 (9th Cir. Sep. 21, 1995) (quoting *Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1378 (9th Cir. 1986)). Fremont thus stands in the shoes of the three patients from whom it claims to have received assignments. None of those patients could have brought claims like those at issue here, which seek declaratory and injunctive relief under every plan United insures or administers nationwide, based on the threat of future harm to Fremont and unspecified third parties not before the Court.

       1.   *Fremont lacks standing to pursue a class action without class allegations.*

Fremont does not seek any relief related to the claims as to which the patients at issue in this litigation assigned Fremont their rights. Instead, it seeks prospective relief as to hypothetical *future* claims submitted on behalf of third parties. Specifically, Fremont requests injunctive and declaratory relief precluding United from applying its purported "Policy" to Fremont, to Fremont and "others similarly situated," to Fremont "or any of its affiliates," or to any healthcare provider anywhere— with each formulation of the requested relief applying to future claims for services rendered to other members under every plan United insures or administers. (*See* Compl. Prayer for Relief.) Fremont thus attempts to plead something akin to a class action without a class.

The members who purportedly assigned their rights to Fremont would lack standing to bring such claims in their own right. It is unclear how Fremont believes that it may bring an ERISA claim to challenge United's policies with respect to *non*-ERISA plans. But even setting that aside, members of one ERISA plan generally do not have standing to challenge an administrator's decisions concerning *other* ERISA plans. *See Acosta v. Pac. Enters.*, 950 F.2d 611, 617 (9th Cir. 1991). And even had Fremont sought this type of relief with respect to the plans under which it claims to have received assignments, an ERISA plaintiff generally may not "seek injunctive" or other "relief on behalf of other Plan beneficiaries, without class allegations or some other permissible statutory basis for doing so." *Amy F. v. Cal. Physicians' Serv.*, No. 19-CV-6078 YGR, 2020 U.S. Dist. LEXIS 97488, at *3 (N.D. Cal. June 2, 2020). Such a request "would essentially seek relief for future [p]lan members," and "contravene[ ] the general rules applicable to Article III standing and its prudential limitations." *Wise v. MAXIMUS Federal Services, Inc.*, 478 F. Supp.3d

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

873, 896 (N.D. Cal. 2020). Courts regularly dismiss ERISA claims that are essentially class actions without class allegations. *See, e.g.*, *id*.

> 2.   *Fremont fails to identify a present controversy or future harm that would afford it standing to seek prospective relief.*

Fremont's claims face another fundamental problem: Fremont stands in the shoes of the assigning members, but it cannot identify a present controversy or risk of future harm *as to those members*. Again, United paid the claims at issue in this litigation, and while Fremont complains about the timing and amount of United's payments, Fremont does not seek any relief whatsoever with respect to those claims. Instead, unlike in a typical ERISA action, Fremont seeks only relief related to hypothetical *future* claims. Fremont cannot credibly assert that those future claims will be submitted on behalf of any of the three members from whom Fremont ostensibly received assignments; in each case, as the complaint makes clear, Fremont rendered one-off emergency treatment to that member for an unexpected, non-recurring, and acute condition. It is plainly speculative that these members will require this sort of treatment again, much less receive it from Fremont in particular. It is even more speculative that Fremont will be bill that treatment under the 99285 CPT code it alleges United targets and "downcodes."

Fremont attempts to side-step this issue by alleging harm to *Fremont*, or to unidentified United members. But the members at issue would have no right to seek injunctive or declaratory relief to remedy a threatened injury to these third parties. The patients would not be the "person exposed to a risk of future harm" with standing to pursue prospective relief. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021). Fremont "may raise only those claims that the insured-assignor could raise in a direct action." *Cedars-Sinai Med. Ctr.*, 1995 U.S. App. LEXIS 27693, at *6-7. And because the Patients here would not have standing to seek injunctive or declaratory relief in their own right, neither does Fremont.

"A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). ERISA "does not relieve plaintiff of the obligation to satisfy constitutional standing requirements." *Amy F.*, 2020 U.S. Dist. LEXIS 97488, at *3. Where a party pursues "claims for declaratory and injunctive" under

ERISA, they must still demonstrate that any alleged future injury is not merely "hypothetical or speculative." *Delgado v. ILWU-PMA Welfare Plan*, No. CV 2:18-cv-5539 CBM, 2018 U.S. Dist. LEXIS 225239, at *12 (C.D. Cal. Nov. 20, 2018); *see also id.* (dismissing claims for injunctive and declaratory relief under ERISA for lack of standing premised on the risk that "patients will seek medical services from providers—which has not happened—and [] the Plan will deny the resulting claims—which has not happened—and [] the Plan will use unlawful practices in denying those benefits—which has not happened"). As when seeking injunctive relief, a party seeking declaratory relief must "must demonstrate that the probability of that future event occurring is real and substantial, [and] 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Crossley v. California*, 479 F. Supp. 3d 901, 920 (S.D. Cal. 2020) (quoting *Steffel v. Thompson*, 415 U.S. 452, 460 (1974)). Accordingly, to survive a motion to dismiss a plaintiff must plead "a sufficient likelihood that [they] will again be wronged in a similar way." *Davidson*, 889 F.3d at 967; *see also Bellanger v. Health Plan of Nevada, Inc.*, 814 F. Supp. 914, 917 (D. Nev. 1992) (holding the plaintiff lacked standing to seek injunctive relief under ERISA where there are insufficient allegations of future harm).

In the context of potential future medical claims, "[i]n order to satisfy the requirement that [they] be subject to a likelihood of substantial and immediate irreparable injury, [a patient] would have to convince th[e] Court that [they are] likely to be injured again in the near future, that [they] would then submit a claim to Defendant, who would then deny this claim in violation of ERISA, and that this denial of medical coverage would result in an injury not subject to a remedy at law." *See Bellanger*, 814 F. Supp. at 917. Fremont makes no real effort to show threatened future harm to the patients who allegedly assigned it benefits, or some ongoing controversy affecting those patients' rights. Nor could it. Those patients' claims are fully adjudicated. The small handful of allegations Fremont includes in its complaint concerning the risk of future injury to the patients at issue range from the merely conclusory to the nonsensical. (*See* Compl. ¶ 123 ("both the Patients and Fremont will be irreparably harmed by United in the future…"); *id.* ¶ 138 ("Patients are at risk of future wrongful denials of benefits."); *id.* ¶ 151 (Patients *and thousands of others under the same facts and circumstances* are at risk of continued wrongful denials of benefits in the future.")

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

(emphasis added); *id.* ¶ 171 (Same).) The Court need not credit such conclusory allegations. *See Cramer v. John Alden Life Ins. Co.*, 763 F. Supp. 2d 1196, 1209 (D. Mont. 2011).

It is entirely speculative that the patients at issue will require emergency care in the future, or that they will seek that care from Fremont; this is the very nature of emergency care, illustrated by Fremont's own allegations. (*See* Compl. ¶¶ 62-77 (Patient One fell down a flight of stairs); ¶¶ 78-95 (Patient Two suffered a ruptured appendix); ¶¶ 96-116 (Patient Three suffered heart failure).) Indeed, despite seeking sweeping prospective relief against United ostensibly on behalf of these patients, Fremont makes clear in its complaint that *it does not even know if the patients are still members of United health plans*. (*See id.* ¶ 123.)

Courts addressing far more detailed factual allegations have consistently concluded that plaintiffs lack standing to seek injunctive relief. For example, in *Bailey v. Anthem Blue Cross Life & Health Ins. Co.*, No. C 16-04439 JSW, 2017 WL 2335363, at *3 (N.D. Cal. May 23, 2017) the plaintiff argued she had standing to seek injunctive relief related to future medical insurance claims because of her risk of needing further eating disorder treatment. The court explained that where "the complaint is not itself clear on the potential for relapse or ongoing treatment of Plaintiff's mental disease and eating disorder," there were not adequate factual allegations to support standing to seek injunctive relief. *Id.* at *3; *see also Cramer*, 763 F. Supp. 2d at 1209 ("Whether Cramer will make another claim for benefits under the Plan…and whether the Defendants would engage in the same allegedly wrongful conduct are all uncertain. Cramer's prayer for prospective relief thus reflects a generalized interest in deterrence, which is insufficient for purposes of Article III."); *Gardi v. United Healthcare Servs., Inc.*, No. 19-CIV-80369, 2020 WL 13369089, at *3 (S.D. Fla. Oct. 21, 2020) (denying prospective relief related to an insurer's adjudication of future claims because any future harm was too speculative). Fremont's allegations here are nearly identical to those rejected by other courts as "threadbare recitals of the required injury-in-fact to pursue prospective equitable relief." *Compare* Compl. ¶ 138 ("Patients are at risk of future wrongful denials of benefits"), *with Smith on behalf of Smith v. Health Care Serv. Corp.*, No. 19 C 7162, 2021 WL 963814, at *4 (N.D. Ill. Mar. 15, 2021) (holding the allegation that "Plaintiff and the class are likely to be harmed in the future" was a "mere conclusory statement" that failed to establish standing for prospective relief).

Relatedly, a plaintiff seeking injunctive relief must demonstrate that the requested relief would redress their injury. *See Ketayi v. Health Enrollment Grp.*, No. 20-CV-1198, 2021 U.S. Dist. LEXIS 232341, at *32 (S.D. Cal. Dec. 2, 2021). Here, the claims as to which the patients assigned their rights to Fremont have been fully adjudicated, and Fremont does not seek to revisit United's coverage of those claims. Prospective relief directed to United's adjudication of *future* claims submitted by *third parties* would not redress any injury to the patients at issue here or to the rights they purportedly assigned Fremont concerning the services they received.

This lawsuit has little to do with the three patients referenced in Fremont's complaint—rather, it is about *Fremont* and its "affiliates" (*i.e.*, TeamHealth). Fremont repeatedly alleges that it will be harmed without injunctive and declaratory relief, which, even if true, is not relevant. (*See* Compl. at 2:1-2 ("Defendants' [] conduct…causes grievous harm *to Fremont*") (emphasis added); *id.* ¶ 50 (alleging United uses an algorithm to "*target Fremont's claims*") (emphasis added); *id.* ¶ 123 ("*Fremont* will be irreparably harmed…") (emphasis added); *id.* ¶ 134 (alleging United deprives Fremont of timely response to claim); *id.* ¶ 138 ("to the detriment of Fremont…"). Because Fremont itself has no rights under ERISA, and cannot rely on any rights assigned to it to bring the claims at issue, the Court should dismiss Fremont's complaint.

### E.   Fremont's equitable claims fail because they are thinly veiled non-equitable claims for benefits.

Just as this case is an attempted end-run around separate litigation filed in Tennessee, it is an attempted end run around state and federal law. Both Nevada (Nev. Rev. Stat. § 439B.754) and federal law (42 U.S.C. § 300gg-111(c)) mandate arbitration of payment disputes between Fremont and United related to claims like those at issue here. And at bottom, Fremont's claims raise a payment dispute. (*See, e.g.*, Compl. ¶ 31 (alleging United denies coverage and payment); *id.* ¶ 50 (alleging United denies payment); *id.* ¶ 54 (same); *id.* ¶¶ 74-75 (alleging Fremont was reimbursed "less than 20% of the amount billed" for Patient 1); *id.* ¶¶ 92-95 (alleging Fremont was reimbursed "approximately 30% of the amount billed" for Patient 2); *id.* ¶¶ 113-116 (alleging Fremont was reimbursed "approximately 30% of the amount billed" for Patient 3).)

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Fremont has attempted to reframe its dispute about United's reimbursement of claims as a dispute concerning the *process* by which United allegedly underpays or denies benefits. But this artful pleading cannot save Fremont's claims. Recasting its claims as procedural does not change the crux of Fremont's claims: that it was not properly reimbursed for the emergency services. Indeed, Counts II and III of Fremont's complaint are expressly based on United's alleged denial of benefits. Count II rests on the allegation that "United breached the terms of the ERISA plans by denying coverage and payment for emergency E/M services and treatment rendered by Fremont, which are required to be covered by law." (*Id.* ¶ 147.) It seeks an injunction precluding what it contends are "wrongful denials of benefits." (*Id.* ¶ 151.) Similarly, Count III rests on the allegation that "[o]n information and belief, United denied payment on the Claims by reason of an algorithmic review of the diagnoses on the claim form and has therefore failed to cover and pay for emergency services." (*Id.* ¶ 167.) It similarly requests an injunction against United's "wrongful denials of benefits." (*Id.* ¶ 171.) Any alleged wrongful denial of benefits can plainly be remedied by an award of improperly denied benefits.

Equitable relief is unavailable where there exist adequate remedies at law. *O'Shea v. Littleton*, 414 U.S. 488, 503 (1974) (a "basic requisite[] of the issuance of equitable relief [is] . . . the inadequacy of remedies at law.") ERISA provides relief for recovery of improper denial of benefits under Section 1132(a)(1)(b). Accordingly, "a claimant may not bring a claim for denial of benefits under § 1132(a)(3)" seeking equitable relief "when a claim under § 1132(a)(1)(B) will afford adequate relief." *Villalobos v. Downey Grinding Co.*, No. 8:19-cv-00150, 2021 U.S. Dist. LEXIS 189149, at *7 (C.D. Cal. Aug. 9, 2021).

Where a plaintiff "complains that [an insurer's] allegedly improper claims procedures injured [them] *by leading to a denial of benefits* to which [they were] rightly entitled[,] [a]nother provision of ERISA squarely addresses plaintiff's injury: [] § 1132(a)(1)(B)." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006). "The fact that [Fremont] has not brought an § 1132(a)(1)(B) claim does not change the fact that benefits are what [it] ultimately seeks, and that redress is available to it under § 1132(a)(1)(B)." *Id.*; *see also Ehrlich v. Hartford Life & Accident Ins. Co.*, No. 20-cv-02284, 2021 U.S. Dist. LEXIS 188652, at *9 (N.D. Cal. May 7, 2021) (holding

there to be no available remedy under 502(a)(3) where the "remedy sought by Plaintiff here is necessarily duplicative of his remedy under Section 502(a)(1)(B)"); *Robertson v. Standard Ins. Co.*, No. 3:14-cv-01572-HZ, 2017 U.S. Dist. LEXIS 122454, at *7 (D. Or. Aug. 3, 2017) ("a § 1132(a)(3) claim for equitable relief must be more than 'a repackaged claim for benefits wrongfully denied'") (citation omitted).

Given that this is at bottom a dispute concerning payment of benefits, it is unsurprising that Fremont's allegations about why there is no remedy at law are nonsensical and conclusory. Fremont alleges that Patients have no adequate remedy at law because "*additional United members* covered by these ERISA plans will be treated by Fremont." (Compl. ¶ 150 (emphasis added).) Whether other United members are treated by Fremont has no bearing on whether the patients at issue can be made whole through payment of benefits, or whether these hypothetical future denials of benefits may be remedied by an award of denied benefits.

## F.   Fremont fails to plead any violation of ERISA.

Finally, even if Fremont could bring its ERISA claims, Fremont fails to allege any cognizable ERISA violation. For Counts I and III, Fremont cites no plan terms that United allegedly violated. Rather, it baldly alleges that United violated certain provisions of the No Surprises Act, a recent piece of federal legislation, which Fremont contends it may enforce through an ERISA action. (Compl. ¶¶ 127-128, 157.) Specifically, in Count I, Fremont argues that United violated the requirement of the No Surprises Act that an insurer remit either payment or a denial of payment within 30 days (29 U.S.C. § 1185e(a)(1)(C)(iv)), and in Count III, Fremont argues that "on information and belief," United utilized an algorithm to evaluate its claims, which Fremont contends to violate the Act (*id.* § 1185e(a)(1)(C)(iv)).

Neither of these provisions expressly provide for private enforcement. Instead, per the statute's directive, federal agencies have assumed responsibility for enforcing the provisions of the No Surprises Act applicable to insurers. *See* 86 FR 36872, 36902-36903 (July 13, 2021). As directed by Congress, these agencies have created a procedure whereby both members and providers can file complaints against insurers, which the federal agencies will pursue. *See id.* There is no indication that an individual ERISA member, much less a provider assigned limited rights by an ERISA

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

member, may enforce these provisions through private litigation. "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001).

In any event, as to Count I, Fremont fails to plead any violation of the No Surprises Act. As explained in the preamble to regulations implementing that statute:

> The ERISA claims procedure regulation requires group health plans to notify a claimant of a benefit determination for post-service claims not later than 30 days after receipt of the claim. A plan can generally extend this period once for up to 15 days for matters beyond the control of the plan, including if the claimant fails to provide information necessary to decide the claim. In such cases, the plan may notify the claimant they provided insufficient information within 30 days, and the plan must give the claimant at least 45 days to provide additional information. After the information is provided, the plan has 15 days to make a determination. . . . [U]nder the No Surprises Act and these interim final rules, the plan would have up to 30 calendar days to send a notice of denial of payment or an initial payment to the out-of-network provider from the time the claim is resubmitted with additional information.

86 FR at 36901.

For the initial claim by Patient 1, United requested additional information, and "the 30-calendar-day period begins on the date the plan or issuer receives the information necessary to decide a claim for payment for the services." *Id*. at 36872. Fremont does not allege when it provided that information, or that United delayed after receiving it beyond the extended deadline. United paid Patient 1's subsequent claim within 30 days. (Compl. ¶¶ 73, 75). The initial claims for Patients 2 and 3 were fully adjudicated before the No Surprises Act became law, and so could not have violated this provision. (*See id*. ¶¶ 78-88, 96-110.) The subsequent claims for both Patients 2 and 3 were paid with 30 days, plus the 15-day grace period (10 and 3 days after the 30-day window respectively). (*Id*. ¶¶ 92-94, 113-115). At the very least, Fremont has not alleged facts plausibly demonstrating the need for prospective injunctive or declaratory relief with respect to timing of United's payments.

With respect to Count III, Fremont alleges that United violated the No Surprises Act by utilizing an algorithm to adjudicate claims. As an initial matter, as to Patients 2 and 3, Fremont alleges United did so before the No Surprises Act became law. (*See id*. ¶¶ 78-88, 96-110.) Again, United could not have violated a law that was not yet in effect.

Regardless, even as to Patient 1, nothing in the No Surprises Act bars insurers from considering diagnosis codes and symptoms, nor from using an algorithm (which, again, United does not), to help determine the appropriate level of payment for emergency services or whether claims are properly coded.[3] Regulations implementing the No Surprises Act state that an insurer may not automatically "determine[e] whether an episode of care involves an emergency medical condition based solely on final diagnosis codes" and deny a claim on that basis. 86 FR at 36879. Even accepting Fremont's allegations as true, that is not what United did. Instead, United determined that the information Fremont supplied "d[id] not support th[e] *level of service*," meaning the high-severity CPT code applied to the claim, as opposed to whether the claim pertained to a covered emergency medical condition. (Compl. ¶¶ 69, 86, 108.) United covered and paid for all the emergency services Fremont alleges that it provided in its complaint—it merely required Fremont to submit claims utilizing the correct CPT code.

Finally, as to Count II, Fremont fails to identify an improper denial of any benefits. In each case, Fremont submitted a claim that United deemed improperly coded. United thus rejected the claim and allowed Fremont to resubmit it. After Fremont resubmitted the claim utilizing what United deemed to be the proper CPT code, United paid the claim. Fremont does not identify any source of law requiring United to pay a claim it finds to be incorrectly coded. And while Fremont alleges that the amount United paid was substantially lower than what Fremont billed, Fremont does not identify any obligation on United's part to pay Fremont at a higher rate. It points to no plan terms or statutory provisions that would render United's actions a violation of ERISA. Here again, as discussed above, Fremont's complaint lacks sufficient detail to state a claim.

. . .

. . .

. . .

---

[3]     For the sake of clarity, United does not use an algorithm in the manner Fremont alleges, but is merely taking as true the allegations of Fremont's complaint for purposes of the instant motion.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1

**V.    CONCLUSION**

2

   For the foregoing reasons, this Court should dismiss Fremont's complaint in its entirety, with

3

prejudice

4

5

Dated:  September 8, 2022                     **PISANELLI BICE PLLC**

6

7

                     By:   /s/ Brianna Smith

8

                        James J. Pisanelli, Esq., Bar No, 4027
                        Debra L. Spinelli, Esq., Bar No. 9695

9

                        Brianna Smith, Esq., Bar No. 11795
                        400 South 7th Street, Suite 300

10

                        Las Vegas, Nevada 89101

11

                        Jeffrey S. Gleason (*pro hac vice pending*)
                        Jamie R. Kurtz (*pro hac vice pending*)

12

                        Charlie C. Gokey (*pro hac vice pending*)
                        ROBINS KAPLAN LLP

13

                        800 LaSalle Avenue, Suite 2800
                        Minneapolis, Minnesota 55402

14

                        Jessica M. Pettit (*pro hac vice pending*)

15

                        ROBINS KAPLAN LLP
                        2049 Century Park East, Suite 3400

16

                        Los Angeles, California 90067

17

                        *Attorneys for Defendants United HealthCare Insurance Company and United HealthCare Services*

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of PISANELLI BICE PLLC and that, on this 8th day of September, 2022, I caused to be served a true and correct copy of the above and foregoing **DEFENDANTS' MOTION TO DISMISS** via the Court's CM/ECF service system.


                                                       /s/ Shannon Dinkel
                                 An employee of PISANELLI BICE PLLC

## INDEX OF EXHIBITS

| EXHIBIT | EXHIBIT DESCRIPTION | PAGE RANGE |
|---------|--------------------|-----------|
| A | TeamHealth Press Release (July 13, 2022) | A.001 – A.003 |
| B | Complaint; *United HealthCare Services, Inc., et al. v. Team Health Holdings, Inc., et al.*; Case No. 3:21-cv-00364 (United States District Court Eastern District of Tennessee; October 27, 2021) | B.001 – B.062 |
| C | Answer; *United HealthCare Services, Inc., et al. v. Team Health Holdings, Inc., et al.*; Case No. 3:21-cv-00364 (United States District Court Eastern District of Tennessee; June 9, 2022) | C.001 – C.030 |
| D | Nevada Secretary of State Listing Fremont Emergency Services (Scherr), Ltd. | D.001 – D.004 |
| E | Qui Tam Settlement Agreement; *United States ex rel. Hernandez, et al. v. TeamHealth Holdings, Inc., et al.*; June 14, 2021 | E.001 – E.016 |
| F | TeamHealth discovery letter from Gary Shockley to Charlie C. Gokey (July 27, 2022) | F.001 – F.012 |