UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Fremont Emergency Services (Scherr), LTD, <br><br> Plaintiff <br><br> v. <br><br> UnitedHealthcare Insurance Company and United HealthCare Services, Inc., <br><br> Defendants | Case No.: 2:22-cv-01118-CDS-BNW <br><br> **Order Granting Defendants' Motion to Stay and Overruling the Objection to the Magistrate Judge's Report and Recommendation as Moot** <br><br> [ECF Nos. 29, 57] |

This is an Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 et seq. ("ERISA") and No Surprises Act, 42 U.S.C. § 300gg-111(a)(1) ("NSA") case. Fremont Emergency Services, LTD (Fremont), a Nevada-based group of emergency medical professionals, brings suit against UnitedHealthcare Insurance Company and United HealthCare Services, Inc. (collectively, United) to enforce emergency service patients' ERISA-based and NSA-based rights as an assignee. Compl., ECF No. 1. United moves to dismiss the complaint, in part, on the basis that this suit should be dismissed or stayed given the first-filed similar suit in Tennessee, pursuant to the first-to-file rule. ECF No. 29. The motion is fully briefed. ECF Nos. 49, 54.

For the reasons set forth herein, I deny United's motion to dismiss this action without prejudice but grant United's request to stay. I further overrule Fremont's objection to staying discovery as moot.

I.  **Background**

On October 27, 2021, United sued Team Health Holdings, Inc., Ameriteam Services, LLC, and HCFS Health Care Financial Services (collectively, TeamHealth) in the U.S. District Court for the Eastern District of Tennessee for allegedly systematically submitting "upcoded"[1] claims

---

[1] "Upcoding" is a practice where a provider deliberately overstates the nature and degree of treatment rendered to submit billing coding to insurance companies for more expensive services than the ones the patient received.

for emergency services. Tennessee Compl., Defs.' Ex. B, ECF No. 29-2. The court in the Tennessee case denied TeamHealth's motion to dismiss in its entirety in May 2021. *See Unitedhealthcare Servs., Inc. v. Team Health Holdings, Inc.*, 2022 WL 1481171 (E.D. Tenn. May 10, 2022).

Approximately two months later, on July 13, 2022, TeamHealth filed the instant action in this court, alleging that United is illegally "downcoding"[2] its claims, and seeking injunctive relief to halt this purported practice. Compl., ECF No. 1. On September 29, 2022, United moved to dismiss the complaint, arguing, *inter alia*, that the instant case should be dismissed under the first-to-file rule as it "is merely the latest front in an ongoing dispute between United and TeamHealth, a private-equity backed conglomerate that controls medical groups staffing nearly a fifth of the emergency rooms in the United States[,]" which includes Fremont, who United claims is "TeamHealth's frequent pawn in litigation." ECF No. 29 at 1–2. Attached to United's motion to dismiss as Exhibit A is a news article, dated July 13, 2022, where TeamHealth announces the Nevada suit, with the title "TeamHealth Continues Nationwide Fight Against UnitedHealthcare, Seeking Justice for Patients and Clinicians[.]" News Article, Defs.' Ex. A, ECF No. 29-1.

On September 29, 2022, based on the same first-to-file argument in its motion to dismiss, United requested to stay discovery. ECF No. 40. Magistrate Judge Brenda Weksler granted United's motion on November 14, 2022. ECF No. 55. On November 28, 2022, Fremont filed an objection to the Magistrate Judge's order granting the stay (ECF No. 57), which United opposes (ECF No. 59).

**II.      Legal standard**

The first-to-file rule is a generally recognized doctrine of federal comity which "permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). Sound judicial administration would indicate that when two identical

---

[2] Specifically, TeamHealth alleges that United engages in an illegal practice of delaying and denying coverage on claims submitted for emergency services based on the diagnosis codes on the claim form. ECF No. 1 at 9.

actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action. *Id.* at 95. Thus, "[t]he 'first to file' rule normally serves the purpose of promoting efficiency well and should not be disregarded lightly." *Id.* (internal quotation omitted). "When applying the first to file rule, courts should be driven to maximize 'economy, consistency, and comity.'" *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)).

When deciding whether to apply the first-to-file rule, district courts look to three factors: (1) chronology of the lawsuits; (2) similarity of the parties; and (3) similarity of the issues. *Kohn Law Group, Inc.*, 787 F.3d at 1240. However, the first-to-file rule is not a rigid inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1991). Indeed, "[t]he most basic aspect of the first-to-file rule is that it is discretionary[.]" *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). Once a court determines that the first-to-file rule applies, the court may transfer, stay, or dismiss the action. *Alltrade, Inc.*, 946 F.2d at 623.

## II. Discussion

### A. The second-filed suit should be stayed.

Based on consideration of the relevant first-to-file factors, I find that the second-filed instant suit should be stayed for the sake of consistency and judicial efficiency.

#### i. *The Tennessee suit was filed first.*

There is no dispute that the first factor is satisfied here. The instant case was filed almost two months after the Tennessee case. *Compare* ECF No. 1, *with* ECF No. 29-2; *see Vimo, Inc. v. Norvax Corp.*, 2007 U.S. Dist. LEXIS 113137, *5 (N.D. Cal. June 22, 2007) (finding the chronology factor "easily met" where the first lawsuit was filed more than a month before the present action).[3]

---

[3] Fremont does not dispute that this factor is satisfied. ECF No. 49 at 5 (admitting that "there is no dispute that the Tennessee Litigation was filed first.")

     *ii.*  *The parties are substantially similar.*

  I also find that the parties between the two suits are substantially similar. Fremont argues in its response to the motion to dismiss that the first-to-file rule does not apply here because "there is no identity of parties between the two lawsuits." ECF No. 49 at 3. Specifically, it points out that Fremont is not a party in the Tennessee litigation; rather, that the defendants in the first suit are non-clinician entities TeamHealth Holdings, Inc., Ameriteam Services, LLC and HCFS Health Care Financial Services LLC. *Id.*

  However, "the first-to-file rule does not require exact identity of the parties" but rather "substantial similarity of parties." *Kohn Las Group, Inc.*, 787 F.3d at 1240 (citations omitted). Indeed, "[t]he rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional, unmatched parties in one or both matters." *PETA, Inc. v. Beyond the Frame, Ltd.*, 2011 U.S. Dist. LEXIS 157782, at *4 (C.D. Cal. Feb. 16, 2011) (quoting *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 958 (N.D. Cal. 2008); *see also Herer v. Ah Ha Pub., LLC*, 927 F. Supp. 2d 1080, 1089 (D. Or. 2013) ("Where the issues are substantially similar, the absence of a single party from the first-filed suit will not necessarily defeat the first-to-file suit."). Instead of exact identity, the fulcrum of this factor is whether the parties represent the "same interests" and whether the absence or addition of a party will have a "bearing on the resolution of the dispute." *See Aqua Connect, Inc. v. SHI Int'l Corp.*, 2019 WL 8883452, at *3 (C.D. Cal. Dec. 16, 2019) ("Courts have found that if the parties are not identical in the two related actions, they are 'substantially similar' under the first-to-file rule if they represent the same interests.") (citation omitted); *SASCO v. Byers*, C 08-5641 JF (RS), 2009 WL 1010513 (N.D. Cal. Apr. 14, 2009) (finding parties were "substantially similar" for the first-to-file rule where they were "functionally identical" between the two actions when the absence of a party had "no bearing on the resolution of the dispute").

While Fremont was not named in the Tennessee suit, it is an affiliate of TeamHealth. News Report, Defs.' Ex. A, ECF No. 29-1; *see Aqua Connect, Inc.*, 2019 WL 8883452, at *3 (recognizing that corporate relationship, particularly where liability may flow between the parties or the cases' outcome will affect both parties, to be grounds for substantial similarity between the parties) (citing *McCain v. Racing*, 2007 WL 2435170, at *2 (S.D.N.Y. Aug. 27, 2007)). More importantly, Fremont shares TeamHealth's interest in a successful defense against United's allegations of its upcoding practices in the Tennessee case and TeamHealth shares Fremont's interest in pursuing a successful injunction against United based on United's alleged downcoding practices—which constitutes part of TeamHealth's defense to the Tennessee suit. Answer and Aff. Defenses to Tennessee Compl., Defs.' Ex. C, ECF No. 29-3 at 3. TeamHealth and Fremont *themselves* clearly believe that they represent similar interests in these suits given the press release TeamHealth released in July announcing that "*TeamHealth* Continues Nationwide Fight Against UnitedHealthcare, Seeking Justice for Patients and Clinicians" in reference to the Nevada suit filed by *Fremont.* News Article, Defs.' Ex. A, ECF No. 29-1 (emphasis added). For these reasons, I find the parties to be substantially similar.

### iii.   *The issues are substantially similar.*

Finally, I find the issues to be substantially similar. Fremont argues that the Tennessee and Nevada cases are not substantially similar because, in the instant case, Fremont "seeks to enjoin United from continuing its policy of denying claims for emergency services and refusing to pay in accordance with federal law" and in the Tennessee case "United alleges that the Tennessee Defendants . . . . conspired to 'upcode' approximately 47,000 high acuity claims submitted by providers across the country in order to obtain higher levels of reimbursement." ECF No. 49 at 6–7. Fremont also points out that the causes of action are different, the instant case involving ERISA and NSA claims on behalf of the patients while the Tennessee case comprises fraud and conspiracy claims.[4] *Id.* But "the requirement that the issues in both actions be 'substantially similar' is satisfied even where different claims are advanced in each action, so

---

[4] Though the Tennessee case also includes an ERISA claim. Tennessee Compl., Defs.' Ex. B, ECF No. 29-2.

long as the 'key dispute' in each action is the same." *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, 2012 U.S. Dist. LEXIS 112346, 2012 WL 3277222, at *3 (N.D. Cal. Aug. 9, 2012). Here, the key dispute is essentially two sides of the same coin—did TeamHealth/Fremont fraudulently upcode claims, or did United illegally delay and underpay claims?

While there conceivably could be daylight between the resolution of these two cases—meaning, that the outcome of one suit may not automatically vitiate or validate the other[5]—the judgment of one case will inextricably bear on the resolution of the other. Moreover, much of the same evidence that will be adduced in discovery in the Tennessee case will also be relevant and sought here. Indeed, TeamHealth is seeking discovery in the Tennessee case into the very alleged United "downcoding" policy at issue here in the Nevada case. Discovery Letter, Defs.' Ex. F, ECF No. 29-6. I thus find that separate adjudication of these cases will not just be judicially inefficient and may lead to conflicting judgments. *See Aqua Connect, Inc.*, 2019 WL 8883452, at *5. As such, I deny United's motion to dismiss without prejudice but stay the proceedings until the resolution of the Tennessee case.

Because I grant the stay, Fremont's objection regarding staying discovery (ECF No. 57) is overruled as moot.

### III.    Conclusion

IT IS THEREFORE ORDERED that defendants' motion to dismiss **[ECF No. 29] is DENIED without prejudice and GRANTED to the extent it requests a stay.** The Clerk of Court is kindly instructed to stay this case. The parties are directed to file a notice that the Tennessee case has resolved within 30 days after resolution, and a joint status report proposing a scheduling order within 45 days of the resolution of the Tennessee case.

---

[5] For example, in the way that a ruling on the validity and enforceability of a patent would resolve both a suit to enforce the patent and a countersuit for a declaratory judgment that such patent is invalid and unenforceable. *See, e.g., Pacesetter Sys.*, 678 F.2d at 95.

IT IS FURTHER ORDERED that Fremont's objection to the Magistrate Judge's order staying discovery **[ECF No. 57]** is OVERRULED as moot.

Dated: December 8, 2023

_____
Cristina D. Silva
United States District Judge